IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD HANKS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANTHONY A. RAMOS, CHARLES )<br>McDANIELS, B. MUELLER, LINDA )<br>GOFORTH, RACHEL VASQUES, JACKIE )<br>MILLER, RICHARD MOORE, TYRONE )<br>MURRAY, LT. WALLER, RONALD J. )<br>MEEK, and ROGER E. WALKER, JR., )<br>)<br>Defendants. ) | Case No. 3:06-cv-195-DGW |

**MEMORANDUM AND OPINION**

**WILKERSON, Magistrate Judge**.

This action comes before the Court on the Motion for Summary Judgment filed by Defendants Ramos, Mueller, Moore, Waller, Walker, Murray, Goforth, Miller, Vasques, Meek and McDaniels (Doc. 53). For the reasons set forth below, the motion is **GRANTED** and the action **DISMISSED**.

FINDINGS OF FACT

Plaintiff filed his complaint in this 42 U.S.C. § 1983 action on March 3, 2006 (Doc. 1). Upon threshold review, the Court dismissed all claims but one: that various Illinois Department of Corrections ("IDOC") officials denied Plaintiff his constitutional rights by exposing him to environmental tobacco smoke ("ETS"), which caused medical problems.

*Material Facts*

The Court finds the following facts to be material: Plaintiff, an inmate in Stateville Correctional Center, was housed in the North 1 protective custody unit at Menard Correctional

Center from February 2002 to January 23, 2008 (Plaintiff's. Deposition. pp 10-11, 15-16). Plaintiff alleges that while housed in that unit he was exposed to ETS that caused him to suffer, headaches, chest pains, difficulty breathing, dizziness, nausea, and a stroke. (Complaint; Pl. Depo. pp. 44-54). Plaintiff stated in deposition that no doctor has ever diagnosed ETS as the cause of his headaches, chest pains, difficulty breathing, dizziness, and nausea (*Id.* at 52). No doctor has diagnosed that Plaintiff suffered a stroke; Plaintiff self-diagnosed the stroke (*Id.*). He claims that the stroke causes him pain in his right kidney (*Id.* at 45). Plaintiff further claims that exposure to ETS exacerbated his hypertension (*Id.* at 55). Plaintiff was diagnosed with hypertension in 1999 (*Id*. at 54). No doctor has instructed Plaintiff to avoid ETS because it would aggravate his hypertension (*Id.* at 55). No doctor has ordered that Plaintiff be celled with a non-smoking cellmate (*Id*. at 53). No doctor has told Plaintiff that he faces an increased risk of future harm as a result of exposure to ETS at Menard (*Id.* at 62).

    Plaintiff does not smoke (Pl. Depo. p. 61). Between 2005 and 2007, Plaintiff made approximately six requests for placement in a non-smoking cell (*Id.* at 15-22). Plaintiff submitted with his complaint a letter from Ronald J. Meek, IDOC Deputy Director, dated July 28, 2003, which indicated that the IDOC had performed an investigation regarding Plaintiff's complaints of poor ventilation and determined that ventilation in the North Cell House was adequate (Doc. 1-2, p. 6). A second letter from Ronald J. Meek, dated September 29, 2003, states, "Our records indicate that since you arrived at Menard Correctional Center on February 14, 2002, you have not signed a non-smoking request slip. However it is noted that as of September 23, 2003, you are already celled with another offender who is listed as a non-smoker" (Doc. 1-2, p. 8). On August 29, 2005, the Administrative Review Board denied an appeal of a grievance regarding smoking in protective

custody. The letter denying the appeal stated: "This office contacted the Menard Administration and was informed that every effort is made to place with a non-smoking cellmate when requested. It is noted that you are currently housed with a non-smoker" (Doc. 1-2, p. 5).

Despite the requests, Plaintiff was not assigned a non-smoking cell between 2002 and 2008 (Pl. Depo. p 19). Instead, Plaintiff was housed with inmates he considered heavy smokers (*Id.* at 50). Plaintiff reports that since January 1, 2008, when smoking was banned at Stateville, his medical complaints have improved (*Id.* at 61).

It is disputed whether Plaintiff was directed by a doctor or other medical professional to avoid second-hand smoke. Plaintiff states in deposition more than one doctor told him to avoid smoke and avoid being around smokers (Pl. Depo. p. 49, 53-55). Plaintiff submits with his response to the motion for summary judgment medical progress notes indicating that between 2002 and 2008 Plaintiff complained of headache, dizziness, chest pains, difficulty breathing, and nausea. He complained to doctors that second-hand smoke caused his symptoms, but he also attributed the symptoms to his cell being too hot (Doc. 56-2, p. 7) and dust (Doc. 56-3, p. 1). His hypertension was described as "well controlled" in August 2001 (Doc. 56-2, p. 2), under "fair control" in August 2002, and under "good control" in October 2002 (Doc. 56-2, pp.4-5). The medical records also indicate that Plaintiff was treated with medication for his hypertension (Doc. 56-2, pp. 1-7). On March 21, 2005, Plaintiff complained of chronic chest pain which worsened when his cellmate smoked (Doc. 56-2, p. 7). On January 29, 2007, Plaintiff complained of dizziness and coughing due to dust and ETS. He was encouraged to avoid smoke (Doc. 56-3, p. 1).

*Motion for Summary Judgment*

On August 14, 2008, all Defendants moved for summary judgment, arguing that they are

entitled to judgment in their favor because Plaintiff has not demonstrated a serious medical need or deliberate indifference thereto, has not demonstrated evidence of future injuries, that Defendants Walker and Moore cannot be held liable for any constitutional violations because they were not personally involved in any deprivation, and that the Defendants are entitled to qualified immunity (Doc. 53). In response, Plaintiff argues that he has sufficiently demonstrated both present and future constitutional injuries, that Defendants Walker and Moore were personally involved in denying Plaintiff's grievances, and that Defendants are not entitled to qualified immunity (Doc. 56).

**CONCLUSIONS OF LAW**

*Summary Judgment Standard*

A party is entitled to summary judgment if it can show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant must meet an initial burden of production to show material facts that are not genuinely disputed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is not necessary to introduce facts to make an initial showing; "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the movant meets its initial burden, the non-movant must respond and show a genuine issue for trial to survive the motion. Fed. R. Civ. P. 56(e)(2). The non-moving party may not rely on the allegations of the pleadings, but must make a showing by discovery and disclosure materials on file and affidavits. *Id.*; 477 U.S. at 324. There is a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]ny doubt as to the existence of a genuine issue for trial should be resolved against the moving party." *Celotex Corp.*, 477 U.S.

at 330 note 2 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

### *Deliberate Indifference to a Serious Medical Need*

Conditions of confinement may constitute a violation of the Eighth Amendment when they are inhumane. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the Plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). With respect to the objective component of that inquiry, "[a] 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) (citation omitted).

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

### *Legal Standard for Exposure to ETS*

Exposure to ETS may violate the Eighth Amendment when that exposure causes a present harm or an unreasonable risk of future harm. *See Helling v. McKinney,* 509 U.S. 25 (1983); *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Exposure to ETS is not a *per se* violation of the constitution. For instance, in *Goffman v. Gross*, the Court upheld judgment as a matter of law for defendants when there was no evidence that the plaintiff suffered a serious medical condition exacerbated exposure to ETS. 59 F.3d 668, 671 (7th Cir. 1995). In cases where a prisoner does not suffer from some independent medical need or condition, symptoms indicating general discomfort, such as breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy, *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999), or mild asthma with wheezing, shortness of breath, dizziness, and nausea, *Oliver v. Deen*, 77 F.3d 156, 158 (7th Cir. 1996), are insufficient to violate the Eighth Amendment.

Exposure to ETS may, however, constitute a serious deprivation when it exacerbates a prisoner's existing medical condition. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (holding that exposure to ETS that aggravated chronic asthma stated claim for deliberate indifference to serious medical need); *Lee v. Young*, 533 F.3d 505 (7th Cir. 2008) (holding that genuine issue existed as to objective seriousness of prisoner's medical condition when some

evidence showed that ETS aggravated prisoner's asthma).

### *Plaintiff's Claim for Present Harm*

Plaintiff's subjective complaints of nausea, dizziness, shortness of breath, and chest pains have been determined as a matter of law to be insufficient to state a serious medical need. *See Henderson*, 196 F.3d at 846; *Oliver*, 77 F.3d at 158. As to Plaintiff's allegation that he suffered a stroke, he provides no corroborating medical evidence to show that he suffered a stroke. He testified in deposition that no physician has diagnosed that he suffered a stroke and admitted he self-diagnosed the stroke. This allegation alone will not defeat a motion for summary judgment. *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) ("[A] plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment."). Further, the court is not required to consider conclusory statements or give credit to inferences that are "flights of fancy, speculations, hunches, intuitions, or rumors." *See Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003) (personal knowledge of an affiant for purposes of summary judgment must be grounded in "observation or other first-hand personal experience") (quoting *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir. 1991)).

As to Plaintiff's complaint that the exposure to ETS exacerbated his hypertension, he offers no corroborating medical evidence to support this conclusion. He points to one medical note indicating that he is "encouraged to avoid situations with increased smoke." This medical note is dated January 29, 2007, almost a year after Plaintiff submitted his original complaint. Further, it is based upon Plaintiff's subjective reports of "problems with dust and second hand smoke." (Doc. 56-3, p. 1). This notation is insufficient to establish that ETS worsened his existing hypertension. Plaintiff has made no showing that any doctor made a causal connection between Plaintiff's

exposure to ETS and his hypertension. Records submitted with his complaint and in response to the motion for summary judgment indicate that Plaintiff's hypertension was evaluated as fairly and well controlled. Without a professional medical indication that the ETS aggravated his hypertension, the only evidence Plaintiff provides is his own speculative diagnosis. As noted above, such uncorroborated and conclusory testimony is insufficient to defeat summary judgment. *Weeks*, 126 F.3d at 939. Thus, the Court finds that Plaintiff has not sufficiently demonstrated the existence of a serious medical need as required to sustain a claim of a violation of the Eighth Amendment.

Even if Plaintiff's uncorroborated testimony, coupled with the chart note that Plaintiff was "encouraged to avoid" smoke, were sufficient to demonstrate a serious medical need, Plaintiff's Eighth Amendment claim would still fail because he has not demonstrated that any defendant acted with deliberate indifference toward that medical need. To show deliberate indifference, Plaintiff must demonstrate that the Defendants acted with a sufficiently culpable state of mind. Deliberate indifference requires that the defendants have knowledge of Plaintiff's medical need and despite that knowledge disregard a substantial risk of harm to the Plaintiff. Plaintiff has not provided any evidence that any of the Defendants had knowledge that Plaintiff's hypertension was being made worse by exposure to ETS. No doctor ever determined that his hypertension required limited exposure to smoke, or that his hypertension required that he be placed in a non-smoking cell or a non-smoking wing. "[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals." *Lee*, 533 F.3d at 511(citing *Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006)). No Defendant could have acted with deliberate indifference to Plaintiff's alleged serious medical need without knowledge that a serious medical need even existed. Furthermore, the

documents submitted by Plaintiff himself indicate that as a result of his complaints and grievances prison officials conducted an investigation of the ventilation in the North Cell House and determined that Plaintiff was assigned to cells with non-smokers. This does not show the recklessness required to demonstrate deliberate indifference. At best, failure to actually place him in a non-smoking cell would constitute negligence, which is insufficient to demonstrate deliberate indifference. Finally, the medical records submitted by Plaintiff indicate that he did receive treatment and medication for his hypertension. His hypertension was described variously as well-controlled, under fair control, and under good control. That Plaintiff received favorable responses to his complaints and received medical treatment for his condition belie an assertion of deliberate indifference.

*Plaintiff's Claim of Future Injury*

When the exposure to ETS constitutes a risk of future injury, the inquiry is more exacting. In *Helling*, the Supreme Court held that exposure to ETS resulting in an increased risk of future harm can be an objectively serious deprivation when the level of exposure is so unreasonably high that society would not choose "to expose anyone unwillingly to such a risk." 509 U.S. at 36. The Seventh Circuit further interpreted the requirements for recovery for the increased risk to future health in *Henderson*, 196 F.3d 839, holding that a Plaintiff "must still prove to a degree of medical certainty that he himself faces this increased risk . . . and that the risk was proximately caused by the Defendant's wrongful conduct." *Id.* at 851.

Plaintiff offers no evidence tending to indicate that he is at an increased risk of future harm. In fact, Plaintiff stated in deposition that since his transfer to Stateville, and the 2008 smoking ban, his symptoms have improved. As stated above, to show a risk of future harm, Plaintiff would have to provide evidence that he, himself, has a quantifiable increased risk of future harm from the

exposure to ETS. *See Henderson*, 196 F.3d at 851. Plaintiff has made no such showing. Thus, Plaintiff has not met his burden to overcome summary judgment.

Accordingly, the Court finds that Plaintiff has not responded with evidence sufficient to defeat Defendant's motion for summary judgment on the question of deliberate indifference to a present or future serious medical need. Thus, summary judgment is **GRANTED** in favor of Defendants on this question.

### *Personal Involvement*

Defendants Walker and Moore argue that they are also entitled to summary judgment in their favor because they were not personally involved in denying any constitutional rights. There is no need for the Court to go into a lengthy discussion on this point because it has already found that all defendants are entitled to summary judgment on the deliberate indifference claim.

### *Qualified Immunity*

Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir.2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir.2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). The threshold inquiry is whether a defendant's conduct violated Plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time, that is "whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201-02. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is inappropriate." *Id.* at 202.

The Seventh Circuit has expressly ruled that in a section 1983 case, where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597 (7th Cir. 1997) (citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir.1995)). Because this Court concluded above that none of the Defendants violated Plaintiff's constitutional rights, it is thus unnecessary to determine whether these defendants are entitled to qualified immunity.

## CONCLUSION

Based on all the foregoing, the Motion for Summary Judgment filed by Defendants Ramos, Mueller, Moore, Waller, Walker, Murray, Goforth, Miller, Vasques, Meek, and McDaniels is **GRANTED**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

**DATED: September 29, 2009**

<u>s/*Donald G. Wilkerson*</u>
**DONALD G. WILKERSON**
**United States Magistrate Judge**